AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
for the

**FILED - USDC -NH**
**2022 JUL 26 PM 12:39**

*DISTRICT OF NEW HAMPSHIRE*

)
)
)
)
John F. Winkelman, Jr. )
_____ )
*Petitioner* )
)
v. )                Case No. _____
)                        *(Supplied by Clerk of Court)*
)
)
Robert Haxelwood, Warden, FCI Berlin )
_____ )
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
### Personal Information

1.   (a) Your full name:   **John F. Winkelman, Jr.**
     (b) Other names you have used: _____
2.   Place of confinement:
     (a) Name of institution:   **FCI Berlin**
     (b) Address:   **P.O. Box 69, Berlin, NH 03570**
     _____

     (c) Your identification number:   **10506-067**
3.   Are you currently being held on orders by:
     ☑ Federal authorities        ☐ State authorities        ☐ Other - explain:
     _____
4.   ___ Are you currently:
     ☐ A pretrial detainee (waiting for trial on criminal charges)
     ☑ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
     If you are currently serving a sentence, provide:
         (a) Name and location of court that sentenced you:   **U.S. District Court for the Middle**
             **District of Pennsylvania**
         (b) Docket number of criminal case:   **01-CR-304-09**
         (c) Date of sentencing:   **December 12, 2003**
     ☐ Being held on an immigration charge
     ☐ Other *(explain)*: _____
     _____
     _____

### Decision or Action You Are Challenging

5.   What are you challenging in this petition:
     ☑ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

❑ Pretrial detention

❑ Immigration detention

❑ Detainer

❑ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory
   maximum or improperly calculated under the sentencing guidelines)

❑ Disciplinary proceedings

❑ Other *(explain)*: _____ .

_____

6.    Provide more information about the decision or action you are challenging:

      (a)  Name and location of the agency or court:   **Federal Bureau of Prisons, FCI Berlin, New Hampsire.**

      (b)  Docket number, case number, or opinion number: _____

      (c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:
           **Denial of Elderly Offender Program eligibility under 34 U.S.C. § 60541**

      (d)  Date of the decision or action:   **September 22, 2021**

### Your Earlier Challenges of the Decision or Action

7.    **First appeal**

      Did you appeal the decision, file a grievance, or seek an administrative remedy?

      ▣ Yes            ❑ No

      (a)  If "Yes," provide:

           (1)  Name of the authority, agency, or court: **Warden, FCI Berlin**

           (2)  Date of filing: **10-06-2021**

           (3)  Docket number, case number, or opinion number:    **1097037-F1**

           (4)  Result:   **Appeal Denied**

           (5)  Date of result: **10-21-2021**

           (6)  Issues raised:   **BOP incorrectly holds that 18 U.S.C. § 924(c) is a crime of violence under 34 U.S.C. § 60541**

      (b)  If you answered "No," explain why you did not appeal: _____

8.    **Second appeal**

      After the first appeal, did you file a second appeal to a higher authority, agency, or court?

      ▣ Yes            ❑ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: <u>BOP Regional Office, Philadelphia, PA</u>

    (2) Date of filing: <u>12-12-2021</u>

    (3) Docket number, case number, or opinion number: <u>1097037-R2</u>

    (4) Result: <u>Appeal Denied due to lack of response</u>

    (5) Date of result: <u>02-15-2022</u>

    (6) Issues raised: <u>BOP incorrectly holds that 18 U.S.C. § 924(c) offense is a</u>
<u>crime of violence under 34 U.S.C. § 60541</u>

(b) If you answered "No," explain why you did not file a second appeal:

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☑ Yes    ☐ No

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: <u>BOP Central Office, Washington, D.C.</u>

    (2) Date of filing: <u>03-02-2022</u>

    (3) Docket number, case number, or opinion number: <u>1097037-A2</u>

    (4) Result: <u>Appeal rejected for not attaching Regional Response</u>

    (5) Date of result: <u>05-13-2022</u>

    (6) Issues raised: <u>18 U.S.C. § 924(c) offense is not a crime of violence under</u>
<u>34 U.S.C. § 60541</u>

(b) If you answered "No," explain why you did not file a third appeal:

10. **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes    ☑ No

If "Yes," answer the following:

(a)    Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

    ☐ Yes    ☐ No

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1)  Name of court: _____

(2)  Case number: _____

(3)  Date of filing: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

_____

_____

(b)  Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes            ☐ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Case number: _____

(3)  Date of filing: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

_____

_____

(c)  Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: _____

_____

_____

_____

_____

_____

11.  **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes            ■ No

If "Yes," provide:

(a)  Date you were taken into immigration custody: _____

(b)  Date of the removal or reinstatement order: _____

(c)  Did you file an appeal with the Board of Immigration Appeals?

☐ Yes            ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Date of filing: _____

(2) Case number: _____

(3) Result: _____

(4) Date of result: _____

(5) Issues raised: _____

_____

_____

_____

_____

(d)　　　Did you appeal the decision to the United States Court of Appeals?

☐ Yes　　　　　　☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Date of filing: _____

(3) Case number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

12.　　**Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes　　　　　　☑ No

If "Yes," provide:

(a) Kind of petition, motion, or application: _____

(b) Name of the authority, agency, or court: _____

(c) Date of filing: _____

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

_____

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** BOP incorrectly concludes that an offense under 18 U.S.C. § 924(c) is a "crime of violence" as defined by 34 U.S.C. § 60541, against statutory text

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
<< See Attached Memoradnum of Law >>
        For More Details

(b) Did you present Ground One in all appeals that were available to you?
☒ Yes          ☐ No

**GROUND TWO:** _____

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Two in all appeals that were available to you?
☐ Yes          ☐ No

**GROUND THREE:** _____

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes          ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:**

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Four in all appeals that were available to you?
☐ Yes          ☐ No

14. If there are any grounds that you did not present in all appeals that were available to you, explain why you did
    not:      **Not Applicable**

**Request for Relief**

15. State exactly what you want the court to do:      **Order the Bureau of Prisons to apply correct**
**definition of "Crime of Violence" as provided in 34 U.S.C. § 60541.**

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

_____

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: _July 23, 2022_

_John F. Winkelman, Jr._
Signature of Petitioner

_George Winkelman_
Signature of Attorney or other authorized person, if any

Case No:

FILED - USDC -NH
2022 JUL 26 PM 12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

JOHN F. WINKELMAN, Jr
(petitioner)

V.

ROBERT HAZELWOOD, WARDEN
(respondent)

MEMORANDUM OF LAW IN SUPPORT OF HABEAS PETITION
(filed under Title 28 U.S.C. Section 2241)

Respectfully Submitted,

Date: July _13_, 2022

John F. Winkelman, pro se
Reg. No: 10506-067
FCI Berlin, P. O. Box 69
Berlin, NH 03570

I. STATUTORY PROVISIONS INVOLVED IN INSTANT HABEAS PETITION

The Elderly Offender Release Program was enacted under the Second Chance Act, which directed the Attorney General to "conduct a pilot program to determine the effectiveness of removing eligible elderly offenders ... from Bureau of Prisons [BOP] facilities and placing [them] on home detention until the expiration of the prison term to which the offender was sentenced." 34 U.S.C. Section 60541(g)(1)(A).

In executing the program, the Second Chance Act provided that "the Attorney General may release some or all eligible elderly offenders . . . upon written request from either the [BOP] or an eligible elderly offender." Id. Sec. 60541(g)(1)(B). The First Step Act of 2018 later amended certain aspects of the Second Chance Act relating to the fiscal years during which the program was to be carried out and the criteria for eligibility for removing for "elderly offenders." Pub. L. No. 115-391, Sec.'s 504, 603, 132 Stat. 5194.

Under the Act, the terms are defined by Congress as:

(A) Eligible elderly offender. The term "eligible elderly offender" means an offender in the custody of the Bureau of Prisons --

(i) who is not less than 60 years of age;

(ii) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of title 18, United States Code), sex offense (as defined in section 111(5) of the Sex Offender Registration and Notification Act [34 USCS Sec. 20911(5)]), offense described in section 2332b(g)(5)(B) of title 18, United States Code, or offense under chapter 37 of title 18, United States Code [18 USCS Sec.'s 791 et seq.], and has served 2/3 of the term of imprisonment to which the offender was sentenced;

(iii) who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii);

(iv) who has not been determined by the Bureau of Prisons, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in clause (ii);

(v) who has not escaped, or attempted to escape, from a Bureau of Prisons institution;

(vi) with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and

(vii) who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

The First Step Act further defines "Home Detention" as:

The term "home detention" has the same meaning given the term in the Federal Sentencing Guidelines as of the date of the enactment of this Act [enacted April 9, 2008], and includes detention in a nursing home or other residential long-term care facility.

The United States Sentencing Guidelines (USSG) Section 5F1.2 provides policy statement of "Home

Detention" stating: "Home detention may be imposed as a condition of probation or supervised release,

but only as a substitute for imprisonment." The commentary to 5F1.2 defines:

"Home detention" means a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and such other times as may be specifically authorized. Electronic monitoring is an appropriate means of surveillance for home detention. However, alternative means of surveillance may be used if appropriate.

Another USSG Section 5C1.1 allows the sentencing judge to substitute home detention for imprisonment

for less serious crimes. See. USSG Sections 5C1.1(c)(2) and (3). Additionally, under USSG Section 7B1.3(d),

a sentencing court may require a recidivist to serve a period of "home detention ... in addition to" the term

of imprisonment. These Guideline Provisions provisions therefore demonstrate that "home detention" and

"imprisonment" not the same. Thus, when Congress specifically referenced the term "home detention" in

Second Chance Act to be applied from the Sentencing Guidelines, it clearly indicated that "release of ...

elderly eligible offenders" to "home detention" is not a form of "imprisonment" or "home confinement."

Congress was mindful of the decisions from the Sixth, Seventh, and First Circuits holding that "home

detention" differs from "imprisonment" under Sentencing Guidelines. The Sixth Circuit has held, since

home detention is a substitute for imprisonment, time spent in home detention is not a "sentence of

imprisonment" for purposes of Sec. 4A1.1(a). See. United States v. Jones, 107 F.3d 1147, 1165 (6th Cir.

1997). The Seventh Circuit has held that electronic home detention is not a form of "imprisonment" for

purposes of Sec. 5G1.3. See. United States v. Phipps, 68 F.3d 159, 162 (7th Cir. 1995); Also see United

States v. Delloiacono, 900 F.2d 481, 484 n.7 (1st Cir. 1991) (stating "Since November 1, 1989, 'home

detention,' which also requires confinement, has been an authorized substitute for a term of imprisonment.")

II. JURISDICTION UNDER 28 U.S.C. Section 2241

Habeas corpus review pursuant to 28 U.S.C. Sec. 2241 is appropriate if a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. Section 2241(c)(3). Fundamentally, a Section 2241 habeas proceeding "is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Thus, a traditional habeas petition challenges the "fact or duration" of physical confinement and seeks either immediate or speedier release from that confinement. Id. at 498. Additionally, habeas jurisdiction is also appropriate to challenge the manner of execution of a federal sentence. Muniz v. Sabol, 517 F.3d 29, 33-34 (1st Cir. 2008) (finding that jurisdiction existed to address Section 2241 habeas petition by federal prisoners challenging delay in transfer to community corrections centers as contrary to statutory duty of BOP).

Federal courts have noted that the text of Second Chance Act provides exclusive power to the Attorney General to order that a prisoner be placed in the Program. citing Section 60541(g)(1)(B) ("the Attorney General may release some or all eligible elderly offenders ... from [BOP] facilities to home detention, upon written request from either the [BOP] or an eligible elderly offender."). Courts have also held - the statute does not give authority to the federal courts to place an offender in the Program - Congress has vested that authority to the executive branch with the power to decide which prisoners may participate in the Program.

But Court decisions also hold that such statutory authority does not mean that the Attorney General's or BOP's determinations regarding participation in the Program are entirely insulated from judicial review. As noted by several circuit and district courts, if the prisoner is challenging the Attorney General's or BOP's statutory interpretation of Section 60541(g), judicial review may be appropriate and the Court may assess "whether the BOP abused its discretion." See. Marino v. Howard, No. 3:20-CV-1501, 2021 WL 4341113, at *4 (M.D. Pa. Sept. 23, 2021); Vasguez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012)(same) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)); Barden v. Keohane, 921 F.2s 476, 478

(3d Cir. 1990) ("if this designation impacts the fact or duration of a prisoner's sentence, the BOP's decision is subject to judicial review for abuse of discretion"); United States v. Allen, 124 F. App'x 719, 721 (3d Cir. 2005); Rush v. Shartle, No. 13-4788, 2015 U.S. Dist. LEXIS 126223, 2015 WL 5567307, at *7 (D.N.J. Sep. 22, 2015) (citing Keohane, 921 F.2d at 480-83) ("The decision of the BOP is subject to judicial review for abuse of discretion").

Under 28 U.S.C. 2241, this court therefore, has jurisdiction to review the BOP's decision for abuse of discretion in denying petitioner's request for release to home detention based BOP's incorrect interpretation of the statutory definition of "crime of violence." See Vasguez, 684 F.3d at 434. "The test is not whether a reviewing court would weigh the factors differently. The writ may issue only where an error is fundamental and carries a serious potential for a miscarriage of justice." See. Eccleston v. United States, 390 F. App'x 62, 65 (3d Cir. 2010). An incorrect determination by the BOP regarding an inmate's "eligibility for early release ... carries a potential for a miscarriage of justice that can be corrected through habeas corpus." Reeves v. Fed. Bureau of Prisons, Civ. 13-1795, 2014 WL 673019, at *1 (D.N.J. Feb. 21, 2014) (citing Murray v. Carrier, 477 U.S. 478, 493 (1986); Keohane, 921 F.2d at 479).

Federal Courts have also disagreed with BOP's contention that all its placement determinations ... are expressly insulated from judicial review. Under an earlier version of the pilot program, the court of Appeals for the Tenth Circuit concluded that it had jurisdiction to consider section 2241 petitions challenging the BOP's statutory interpretation of 42 U.S.C. Sec. 17541(g) (now codified as 34 U.S.C. 60541). See. Mathison v. Davis, 398 F. App'x 344, 345 (10th Cir. 2010) (unpublished) (explaining that the court had "jurisdiction under 28 U.S.C. Sections 1291 and 2253(a)"); Izzo v. Wiley, 620 F.3d 1257, 1258-59 (10th Cir. 2010) (concluding that the court had jurisdiction to consider a seventy-year-old federal prisoner's challenge to the BOP's interpretation of the phrase "term of imprisonment." Under the statutory language then in effect, inmates would qualify for the pilot program only if they had served "the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced." Id. at 1258 (quoting 42 U.S.C. Sec. 1754(g)(5)(A)(ii)).

The Tenth Circuit's decision in Izzo also illustrates that section 2241 petitions can have same limited applicability in this context. Despite the discretionary nature of release to home detention under 34 U.S.C. 60541, the Izzo court still considered section 2241 petition challenging the BOP's interpretation of the statute. Izzo, 620 F.3d at 1260. Even though section 2241 might not be proper to challenge the Attorney General's actual exercise of discretion to deny an inmate access to the home-detention pilot program, Izzo keeps section 2241 available as an avenue for prisoners to raise arguments concerning the procedures through which the Attorney General has exercised discretion. See also Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 307 (2001) (noting that, historically, "[h]abeas courts . . . regularly answered questions of law that arose in the context of discretionary relief"); Sierra v. Immigration & Naturalization Serv., 258 F.3d 1213, 1217 (10th Cir. 2001) (concluding that, even when a statute gives the Attorney General discretion over certain decisions, "challenges [to] the constitutionality of the procedures used" are properly raised under section 2241 because "[i]t is never within the Attorney General's discretion to act unconstitutionally").

III. STATEMENT OF THE CASE

(A) PETITIONER'S CONVICTION AND SENTENCE

On September 25, 2001, a grand jury sitting in Williamsport, Pennsylvania, returned an indictment against the defendant and either others, charging them with various cocaine distribution and drug conspiracy charges.  By October of 2002, all defendants except Petitioner and his brother had entered guilty pleas pursuant to negotiated plea agreements. On April 10, 2003, the grand jury returned a third superseding indictment, re-charging the Petitioner in Count One with conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. Count two through Nine charged Petitioner with a series of substantive distribution, attempted distribution, and possession with intent to distribute cocaine under 21 U.S.C. Sec. 841(a)(1). Counts Thirteen and Fourteen alleged that petitioner's trading of a firearm in exchange of drugs was a violation of 18 U.S.C. 924(c) prohibiting use, carry or possession of a firearm in a drug trafficking crime. (Case No. 01-cr-304-09; Middle District of Pennsylvania)

On June 18, 2003, the jury returned verdicts finding Petitioner guilty of Count One - the conspiracy count - and Counts two, Three and Four. The jury also found Petitioner guilty of Count Thirteen, but not guilty of Count Fourteen, both section 924(c)(1) firearm charges. On December 12, 2003, the District Court sentenced Petitioner to an aggregate term of life imprisonment plus five years, consisting of concurrent life sentences on Counts One and Nine, thirty years each on Counts Two, Three, Four and Eight and a consecutive 60 months on Count Thirteen. On May 18, 2006, the Third Circuit Court of Appeals affirmed his conviction and sentence. United States v. Winkelman, 180 Fed. Appx 397 (3rd Cir 2006)

In Watson v. United States, 552 U.S. 74 (2007), the Supreme Court subsequently held that "a person who receives a firearm in exchange for drugs has not used the firearm as part of the transaction." Id.; see also Rinaldi v. Allenwood, 646 Fed. Appx. 202, 203 (3d Cir. 2016) (in Watson, the Supreme Court held that "an individual who trades drugs for a gun does not 'use' a firearm for purposes of Sec. 924(c)"). When petitioner raised Watson claim to challenge his unlawful conviction, the sentencing court distinguished his case from the Watson,  stating that petitioner was not just convicted of using firearms in relation to the

-6-

drug trafficking offense, rather he was also convicted of possessing firearms in connection with the drug trafficking offense.

The court further held, that since the Supreme Court did not rule whether a defendant who came into possession of a firearm - by trading drugs for it - could be convicted of possessing a firearm in connection with a drug trafficking offense, Watson has no relevancy to the question of whether petitioner possessed a firearm and Watson does not establish petitioner was convicted or a nonexistent offense. See, Winkelman v. Holt, 09-cv-0300, 2009 US Dist LEXIS 39190, 2008 WL 1314864, at *9 (M.D. Pa. May 8, 2009) ("While the Watson case held that a person trading his drugs for firearms did not 'use' a firearm during and in relation to a drug trafficking crime under Sec. 924(c)(1)(A),

In 2016, petitioner was granted presidential commutation of sentence and his life sentence was reduced to a term of 30 years. Based on this commuted sentence, petitioner has now served about 85% of his sentence. Petitioner does not have any serious disciplinary reports in prison during his past 21 years of incarceration.

(B) PETITIONER'S ADMINISTRATIVE REMEDY PROCESS

On September 22, 2021, Petitioner filed an informal remedy requesting to be considered placement in home detention under the Elderly Offender Pilot Program, 34 U.S.C. 60541. (See Appendix 1). His request was denied by the FCI Berlin Staff claiming that his 18 USC 924(c) conviction was a "crime of violence" making him ineligible for the program. Id. Petitioner filed a formal request for administrative remedy (BP-9) to the Warden on October 6, 2021, arguing that his 924(c) conviction is not a crime of violence. (See Appendix 2). He attached the Bureau of Prison Guidance related to the Elderly Offender Program, dated March 15, 2019, which provided the criteria for eligibility. (See Appendix 3-4). He also attached his judgment of conviction (See Appendix 5), and argued that his firearm possession conviction under 924(c) does not make him ineligible under the Pilot Program or the BOP guidance.

On October 21, 2021, the Warden denied his request stating that Bureau of Prison's program statement 5162.05 "classifies all 924(c) convictions as a crime of violence in all cases." (See Appendix-6; copy of

Administrative remedy Case No: 1097037-F1). The Warden failed to read the simple text of the pilot program of the BOP guidance - which specifically states that the crime of violence under that Act is "as defined in section 16 of Title 18) - and not as construed by the Bureau in a policy statement. On October 28, 2021, petitioner filed an appeal to regional Counsel (BP-10) asking for "reconsideration" based on all the documents presented to Warden and BOP Staff. (See Appendix 7). On December 7, 2021, petitioner was delivered a "rejection" of his appeal stating that he "did not writ the reason for appeal on the BP-10." (See Appendix 8). Petitioner obtained a memorandum from staff indicating the delivery of the rejection notice was delayed due to BOP's mistake, and petitioner should be allowed to file an appeal outside of the time-limits imposed. (See Appendix 9).

Petitioner filed another appeal in the regional office on December 12, 2021. (See Appendix 10). The regional office confirmed the receipt of the appeal; issued a remedy Id# 1097037-R2; sua sponte awarded a 30-day extension to itself; and stated that it will respond to the appeal by February 15, 2022. (See Appendix 11). But the regional office failed to adjudicate the appeal altogether. On February 23, 2022, petitioner obtained another memorandum from staff indicating the lack of response from regional office and authorization to file appeal to central office without further delay. (See Appendix 12). On March 2, 2022, petitioner sent the appeal to Central office (See Appendix 13), which the Central office apparently received on April 26, 2022. (See Appendix 14). On May 13, 2022, the central office "rejected" the appeal reasoning that petitioner failed to include the very response from regional office, which the regional office has already failed to provide. Id.

In this administrative remedy maze, the Bureau of Prison staff completely ignored the core facts about the petitioner. Petitioner is 67 years old elderly offender. He suffers from hypertension, hyperlipidemia and thyroid disorder, for which he is prescribed daily medicines. He is a non-violent offender, who was given an excessive sentence (unlike his co-defendants) only because he proceeded to trial. Because of his background, he was awarded a presidential commutation of sentence. But the Bureau of Prisons staff, while completely ignorant of the federal law, also fails to realize that they are denying the benefit of the Elderly Offender program to the very inmate, whose profile the Congress had in its mind while enacting the Second Chance Act.

-8-

IV. PETITIONER HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES

Although not required by 28 U.S.C. 2241 or PLRA, courts require that Federal Prisoners must generally exhaust their administrative remedies before they file a 2241 habeas petition. See, Carroll v. Hazelwood, No. 21-cv-139, 2021 US Dist LEXIS 128036, at *4-5 (D.NH., May 26, 2021); Burman v. Warden Hazelwood, No. 20-cv-982, 2021 DNH 110, 2021 US Dist LEXIS 130978, at *6 (D.NH., July 14, 2021) (requirement that petitioner exhaust administrative remedies comes from common law, and PLRA does not apply in 2241 petitions (footnote 1)). The reason: Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures. In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." 548 U.S. at 90-91.

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. United States Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006). Title 28 of the Code of Federal Regulations sets forth a four-step grievance procedure for administrative remedies for inmates housed in federal prisons. Under this title, an inmate initiates the grievance procedure by presenting an issue of concern informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. Sec. 542.13(a). It the complaint is not or cannot be resolved informally, a prisoner must submit a formal written Administrative Remedy Request, on a BP-9 form, within twenty days of the event triggering his complaint. 28 C.F.R. Sec. 542.14(a). If this second step does no provide satisfactory results, the inmate may file an Appeal, on a BP-10 form, to the appropriate Regional Director within twenty days of the date the Warden signed the response. 28 C.F.R. 542.15(a).

An inmate unsatisfied with the Regional Director's response may submit an Appeal, on a BP-11 form, to the General Counsel within 30 days of the date the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. The regulations also impose a requirement that Bureau of Prison's Staff "shall respond in writing to all appeals." Id. If the inmate does not receive a

-9-

response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level. Id.

When a pro se inmates are required to follow agency procedures to the letter in order to preserve their claims, the courts have required the agencies to similar compliance with its own rules. See Shifflett v. Korszniak, 934 F.3d 356, 367 (3rd Cir. 2019) ("We hold that [federal law] requires strict compliance by prison officials with their own policies."); Downey v. Pennsylvania Dept. of Corr., 968 F.3d 299, 305 (3rd Cir. 2020) ("Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies."); also see Robinson v. Sup't Rockview SCI, 831 F.3d 148, 154 (3rd Cir. 2016) (Administrative remedy unavailable when officials fail to "timely (by its own procedural rules) respond to his grievance.").

In petitioner's case, the Regional Office's failure to respond to petitioner's appeal is considered as a denial. See 28 C.F.R. 542.18 (stating that if an "inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."). Petitioner obtained a memorandum from BOP staff indicating this failure to respond. See Appendix 12. Thereafter petitioner filed an appeal to the central office indicating that Regional Office has failed to respond. But the Central Office rejected the appeal stating that petitioner has failed to attach the same "non-existent" response from the Regional Counsel. It may be amusing to the BOP officials sitting in Central Office to engage in this gamesmanship, but it actually demonstrates the complete lack of competency on their part. See Burman v. Warden, No: 20-cv-982, 2021 US Dist LEXIS 130978 (holding that petitioner could not comply to provide a copy of non-existent decision, which would make further attempt to exhaust administrative remedies futile).

It is well established that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." Jarnigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); and Powel v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999). For example, in Risher v. Lappin, 639 F.3d 236, 239-41

-10-

(6th Cir. 2011), the Sixth Circuit addressed the issue whether a prisoner's efforts to exhaust administrative remedies were sufficient when the prisoner did not receive a response at the regional level and then pursued a remedy with the Central Office. The Court determined that inmate's efforts were sufficient, because he followed the regulations by pursuing a timely remedy to the Central Office when he received no response at the regional level. Id at 240.

As the Supreme Court has re-affirmed that, "[a] prisoner need not exhaust remedies if they are not 'available.'" Ross v. Blake, 136 S. Ct. 1850, 1855 (2016). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Id. at 1859. If a remedy is "unavailable," exhaustion may be excused, especially when, prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Finally, exhaustion is an affirmative defense, and thus the burden of showing non-exhaustion is on the respondent. Russo v. Honen, 755 F. Supp. 2d 313, 315 (D. Mass. 2010) (citing Casanova v. Dubois, 204 F.3d 75, 77-78 (1st Cir. 2002)); see Jones v. Bock, 549 U.S. 199, 218 (2007). Petitioner "has produced evidence that, if accepted as true, could prevent [respondents] from proving that the . . . grievance procedure was available to him . . ., which would excuse him from the exhaustion requirement. For that reason, [respondents] are not entitled to summary judgement based upon [plaintiff's] failure to exhaust his administrative remedies." Ojo v. Medic, No. 11-cv-210, 2012 U.S. Dist. LEXIS 186109, at *26 (D.N.H. Dec. 17, 2012); also see Russo, 755 F. Supp. 2d at 315 ("Unless and until, the defendants respond with evidence to the contrary, there remains a genuine issue of material fact as to whether [plaintiff] was denied access to inmate grievance forms.").

V. BOP'S STATUTORY INTERPRETATION IS ERRONEOUS AND EXCEEDS ITS AUTHORITY

Congress has accorded the BOP broad discretion in certain federal statutes (such as the substance abuse treatment program). But the BOP must exercise its discretion within the prescribed parameters of its statutory authority.  See SEC v. Sloan, 436 U.S. 103, 118 (1978) (court must determine whether agency's exercise of discretion is within the scope of its statutory authority); see also Downey v. Crabtree, 100 F.3d 662, 666 (9th Cir. 1996) ("[T]he Bureau's endowment of broad discretion does not immunize its decisions from judicial review, especially concerning questions of statutory interpretation."). Moreover, courts do not afford Chevron deference to agency pronouncements which lack the force of law. See Christensen v. Harris County, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters -- like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law -- do not warrant Chevron-style deference.").

Petitioners case involves the interpretation of the Second Chance Act. The agency decisions involving interpretations of federal statutes are provided deference as set forth in Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 842-43 (1984). But unlike formal agency regulations, however, informal agency interpretations of statutes, such as the BOP Operations Memorandum and Program Statements here, are not subject to deference under Chevron. See Christensen v. Harris County, 529 U.S. 576, 587 (2000);  Hunnicutt v. Hawk, 229 F.3d 997, 1000 (10th Cir. 2000) ("Where the agency's interpretation of the statute is made informally, however, such as by a 'program statement,' the interpretation is not entitled to [Chevron] deference... .") (quotation marks and citations omitted).

Regardless of the level of deference the courts would give to the BOP's interpretation of the Second Chance Act, the court begins "where all such inquiries must begin: with the text of the statute itself." United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989); City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir 2020). When reading a statute, the court is also to "consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Hueso v. Barnhart, 948 F.3d 324, 333 (6th Cir 2020) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The interpretation of Legal Texts,

Section 24, at p. 167). "lastly, before deferring to an administrative agency's statutory interpretation, courts "must first exhaust the traditional tools of statutory interpretation and reject administrative constructions that are contrary to the clear meaning of the statute." Arangure v. Whitaker, 911 F.3d 333, 336 (6th Cir 2018).

Under a plain-language analysis, the Court can hold that the phrase "crime of violence" in Title 34 U.S.C. 60541(g)(1)(A) unambiguously refers to the offenses defined by Title 18, U.S.C. Section 16. Although recent Supreme Court decisions have clarified the "elements clause" and held the "residual clause" as unconstitutionally vague in 18 USC 16; See. Sessions v. Dimaya, 138 S.Ct. 1204 (2018)(18 USC 16(b) unconstitutionally vague); United States v. Davis, 139 S.Ct. 2319 (2019)(18 USC 924(c)(3)(ii) unconstitutionally vague); United States v. Borden, 141 S.Ct. 1817 (2021)(18 USC 924(c)(3)(i)'s use of force requires specific intent and does not to include reckless conduct), the meaning of "crime of violence" within Second Chance Act Section 60541 is clear.  Congress unambiguously used the phrase "as described in section 16 of Title 18" as "crime of violence" in 34 U.S.C. 60541. With this explicit definition of crime of violence, the term unmistakably refers to, and is limited by the definition as provided by 18 USC Section 16.

Moreover, there are no federal regulations directly concerning the Second Chance Act's pilot program. That said, on April 4, 2019, the BOP published Operations Memorandum 001-2019, which states that "Offenders referred under th[e] pilot program shall be processed for home detention utilizing current RRC [Residential Reentry Center]/Home Confinement procedures." Those procedures are contained in 28 C.F.R. Sections 570.20-.22. See id. 570.20 ("The purpose of this subpart is to provide the procedures of the [BOP] for designating inmates to pre-release community confinement or home detention.").

First, the Operations Memorandum fails to understand the Congressional directive that "home detention" under the pilot program should be given different consideration than "home confinement." Second, the regulations governing "home confinement," which apply indirectly through the memorandum, do not help to clarify any misinterpretation either -- they just give BOP staff discretion to refer inmates for pre-release

-13-

or "home confinement" within certain timeframes if they meet the relevant statutory criteria for pre-release

or home confinement. See id. Sections 570.21-.22. Finally, not only the Operations Memorandum is not

subject to the deference reserved for formal agency regulations, this informal agency interpretation lacks

any "power to persuade." See Christensen, 529 U.S. at 587. Since the BOP's interpretation is completely

opposite to the statutory text, even under the less deferential analysis, this court cannot agree with the

BOP's interpretation and reliance upon it.

While completely ignoring the statutory definition, and without any aid through regulations, the BOP

summarily adds its own definition to the term "crime of violence" in 34 U.S.C. 60541. The BOP holds that

the term "crime of violence" is defined by their Program statement P5162.05, enacted March 16, 2009

"Categorization of Offenses." In P5162.05, the BOP defines the "crime of violence" as:

### 3. OFFENSES CATEGORIZED AS CRIMES OF VIOLENCE

a. Criminal Offenses that are Crimes of Violence in All Cases.  Some Bureau policies or
   programs require a determination that an inmate committed a crime of violence,
   for example, the Program Statement on Inmate Discipline and Special Housing Units.
   Other polices or programs, such as early release pursuant to 18 U.S.C. Sec. 3621(e),
   indicate that an inmate could be denied the benefits of such programs if he or she
   was convicted of an offense listed in either Section 3 or 4.
   . . .
   Any conviction for an offense listed below is categorized as a crime of violence.

   (1) Title 18, United States Code Sections
       924(c) firearms used in violent or drug trafficking crimes
   . . .
   The following offense may be violent depending on the underlying offense.
       Title 18, United States Code Sections
       *924 penalties for firearms violations

### 4. OFFENSES THAT AT THE DIRECTOR'S DISCRETION SHALL PRECLUDE AN INMATE'S RECEIVING CERTAIN BUREAU PROGRAM BENEFITS

For certain Bureau programs, such as early release pursuant to 18 U.S.C. Sec 3621(e)
and placement in Intensive Confinement Centers, an inmate may be denied program
benefits if he or she was convicted of an offense listed in either this section or Section
3. If an inmate is denied the benefit of such a program, staff must carefully describe
the basis for the denial. For example, if an inmate is convicted of an offense listed
in this section, the inmate shall be denied a program benefit because he or she
committed an offense identified as the Director's discretion, rather than a crime of
violence.

In providing the definition under P5162.05, the BOP contradicts another definition of "crime of violence"

in Program Statement 5110.17, "Notification Requirements for Violent Offenders." In P 5110.17, the BOP

incorporates the definitional text of 18 U.S.C. 16 and states that:

A Crime of Violence is defined under Title 18 U.S.C. Sec. 924(c)(3) as an offense that
is a felony and:

Has as an element, the use, attempted use, or threatened use of physical force against
the person or property of another, or:

That, by its nature, involves a substantial risk that physical for against the person or
property of another may be used in the course of committing the offense.

But there is little, if any, indication that the BOP adopted these Program Statements (5162.05 & 5110.17)

utilizing the notice and comment procedures in the APA.  "[U]nless an agency rule is of a type excepted

from the APA, violation of these procedural prerequisites renders it invalid."  Monahan v. Winn, 276

F. Supp. 2d 196, 212 (D. Mass 2003) (citing Auer v. Robbins, 519 U.S. 452, 459 (1997)).  Although the APA

creates an exemption for "interpretative rules" which "don not require notice and comment," Shalala v.

Guernsey Mem'l Hosp., 514 U.S. 87, 99 (1995); see Warder v. Shalala, 149 F.3d 73, 79 (1st Cir. 1998)

(citing 5 U.S.C. Sec. 553(b)), such rules "do not have the force and effect of law and are not accorded

that weight in the adjudicatory process,"  Shalala v Mem'l Hosp., 514 U.S. at 99.

Moreover, "a rule is exempt from notice and comment as an interpretative rule if it does not 'effect a

substantive change in the regulations.'" Warder v. Shalala, 149 F.3d 79 (quoting Shalala v. Guernsey Mem'l

Hosp., 514 U.S. at 100, with internal quotation marks and citation omitted).  Conversely stated, "'if a rule

creates rights, assigned duties, or imposes obligations, the basic tenor of which is not already outlined in

the law itself, then it is substantive.'"  Warder v. Shalala, 149 F.3d at 79 (quoting La Casa Del Convaleciente

v. Sullivan, 965 F.2d 1175, 1177 (1st Cir. 1992)).  In the instant case, construing the P5162.05's "crime of

violence" definition to be applied in 34 U.S.C. 60541, as suggested by the Bureau of Prisons would, effect

an impermissible substantive change in the law.

Title 34 U.S.C. 60541's definitions of the eligibility requirements clearly limits the power or discretion of

the BOP to determine who is eligible under the Act. It relies on the prisoner's statute of conviction and

contemplates the Congressional intent that only certain categories of violent or egregious convictions

-15-

should be made ineligible under the act. Moreover, while the provisions of the Act should be read as a clear statement of Congress's intent, BOP's interpretation destroys the textual reasoning of the Second Chance Act. The BOP cannot pick and choose any offense and label it as crime of violence, nor does the BOP has any broad discretionary authority to do so.

The most natural and logical reading of the Second Chance Act also does not provide or extend the BOP's power to tie any other convictions as crimes of violence. If the BOP's interpretations of the Second Chance's Act's crime of violence definition is allowed, the agency would usurp the congressional intent and authorize boundless unlawful actions. And nothing in the Second Chance Act suggests that Congress gave the BOP any broad authority to insert its own definitions or to promulgate the provisions of Second Chance Act based on the agency's unfettered discretion.

## VI.  CONCLUSION AND RELIEF REQUESTED

Wherefore, based on the foregoing, petitioner respectfully requests this court to direct the Bureau of Prisons to apply the correct statutory interpretation and the definitions provided by 34 U.S.C. 60501.

Respectfully Submitted,

*John F. Winkelman, Jr.*

Date: July _23_, 2022

John F. Winkelman, Jr.

-16-